IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| PROBODH ARORA, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:06-CV-1553-K |
| | § | |
| STARWOOD HOTELS & RESORTS | § | |
| WORLDWIDE, INC., | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Before the court is Defendant's Motion for Summary Judgment, filed July 27, 2007. After review and consideration of the motion, response, reply, summary judgment evidence, and the applicable law, the court has determined that there is no genuine issue of material fact presented in the summary judgment record. Therefore, for the reasons that follow, Defendant's Motion for Summary Judgment is **granted.**

### I. Factual and Procedural Background

Plaintiff Probodh Arora ("Arora") began employment with Defendant Starwood Hotels & Resorts Worldwide, Inc. ("Starwood") on October 1, 1990. He worked as the Banquet Manager at a Starwood-operated hotel in Dallas. In March 2004, General Manager John Everett ("Everett") promoted Arora to the position of Director of Banquets and Outlets, a position that reported directly to Everett. Arora is originally from India, and is a naturalized United States citizen.

1

As the Banquet Manager, Arora was responsible for all operations of the department. All positions within the banquet department reported to him, including the Assistant Banquet Managers. The Assistant Banquet Managers also assisted in supervising line-level employees within the department, such as captains, waiters, and housemen. Mirela Mares ("Mares"), Bindu Jain ("Jain"), and George Attah ("Attah") all worked under Arora as Assistant Banquet Managers. Outlet Supervisor Sarathy Badrinarayan (known as "Badri") also assisted and reported to Arora.

Starwood conducted a confidential employee satisfaction survey ("ESS") each year. The survey asked employees for their input and opinions regarding working conditions, and their department, supervisor, and management. All employees completed the survey, from hourly workers up to management. The survey was coordinated by the human resources department, and conducted by members of the StarVoice Committee, a group of fellow hotel employees. The results of the survey were tabulated by Kenexa Corporation ("Kenexa"), an independent third party. Once the survey was completed, the results were shared with department managers such as Arora. Upon receiving the results, Arora and other managers would use the information to follow up on any deficiencies. Supervisors like Arora were also commended for positive results.

The hotel scheduled the 2005 ESS for September 1, 2005. In an email dated August 17, 2005, the hotel's Human Resources Director Hillary Wynn ("Wynn") stated

2

that on September 1, up to 25 employees at a time would be able to take the paper version of the survey in a room at the hotel. Department heads were asked to ensure that their employees were given adequate time to complete the survey, and that they felt comfortable doing so, without any pressure to provide good scores.

Prior to the 2005 ESS, Arora and/or his assistant managers attended meetings where procedures for the survey were discussed. Although employees had used hard copies to complete the survey in past years, it was Arora's understanding that in 2005, employees could take the ESS online, and that there would be computers available at the hotel for them to do so. Additionally, Wynn's August 17th email states that the hotel was beginning the online version of the survey that week, and that "[w]e are trying to get all associates who have access to a computer to take it via the Internet." Wynn further explained in her email that to access the ESS online, some associates would receive the ESS by email, and others would receive an access code. In her declaration, Wynn states that the codes were to be obtained from the secretary to the hotel's General Manager.

While Arora apparently thought that any employee who wanted to take the ESS online could do so, Wynn states in her declaration that those employees who did not complete the paper survey on September 1, 2005 would have approximately 10 days to complete a hard copy with the assistance of a StarVoice Committee member. She further says in her declaration that the online survey option was available only as a "last

3

resort," e.g., if an employee was on vacation for two weeks. However, the court views this portion of Wynn's declaration as inconsistent with her earlier statement that employees were being encouraged to do the survey online, if possible.

Arora testified that it was his understanding that computers would be set up in the HR department and on the fourth floor of the hotel, in order to provide online access for employees to take the ESS; however, no such computers were actually set up. Based upon what other managers and employees told him, Arora assumed that employees were free to obtain an access code and complete the survey on the computers located in the banquet, restaurant, back storage and/or setup offices. Arora and some of his assistant managers obtained access codes for the survey to be used by other banquet department employees from the General Manager's secretary, and some banquet department employees went to the General Manager's secretary and asked for the codes themselves. These codes were used by banquet department employees to complete the survey on some of the assistant managers' office computers. Arora understood that employees should take the survey without being coerced, and that a manager should not be in the room while an employee was completing the survey.

When Starwood became aware of the number of banquet department employees who had completed the ESS online, it began to investigate. During the investigation, Starwood management received complaints from banquet department employees who said that Arora, Mares, and Badri instructed their subordinates to give them high scores;

4

intimidated workers by staying in the room while the employees completed the survey; and instructed employees to leave the surveys open for their review rather than immediately submitting them online. During the investigation, Kenexa also notified Starwood of an anonymous letter complaining that banquet department employees had been coerced into submitting positive scores. After concluding the investigation, Starwood terminated Arora, Mares, and Badri for what it describes as "coercive misconduct" during the 2005 ESS. Starwood states that it did not terminate Jain or Attah (the other two Assistant Banquet Managers), because it determined that they did not engage in the coercion.

Arora filed suit against Starwood in state court on July 31, 2006, alleging that he was illegally discharged due to his race and national origin, in violation of Title VII, 42 U.S.C. § 2000e, *et seq.,* and the Texas Commission on Human Rights Act ("TCHRA"), Tex. Lab. Code § 21.001, *et seq.,* and because of his age, also in violation of the TCHRA. He additionally alleges claims of retaliation grounded in the anti-retaliation provisions of those same statutes. Starwood subsequently removed the case to this court, and now moves for summary judgment on all of Arora's claims.

## II. Summary Judgment Standard

Summary judgment is appropriate when the pleadings, affidavits and other summary judgment evidence show that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex*

*Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2551 (1986). The moving party bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact. *Celotex,* 477 U.S. at 322-25, 106 S.Ct. at 2551-54. Once a movant makes a properly supported motion, the burden shifts to the nonmovant to show that summary judgment should not be granted; the nonmovant may not rest upon allegations in the pleadings, but must support the response to the motion with summary judgment evidence showing the existence of a genuine fact issue for trial. *Id.* at 321-25, 106 S.Ct. at 2551-54; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255-57, 106 S.Ct. 2505, 2513-14 (1986). All evidence and reasonable inferences must be viewed in the light most favorable to the nonmovant. *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993 (1962).

### III. Defendant's Motion for Summary Judgment

Starwood moves for summary judgment, contending that Arora cannot raise a genuine issue of material fact with regard to any of his claims against it, and that therefore it is entitled to judgment as a matter of law.

#### A. Discrimination Claims

Arora brings claims of discrimination based upon race and national origin under Title VII, and race, national origin and age discrimination under the TCHRA, contending that Starwood terminated his employment due to his race, national origin, and age. Starwood requests summary judgment on all of Arora's claims, arguing that he

6

cannot establish a *prima facie* case of discrimination, and/or raise a material fact issue whether its decision to terminate him was a pretext for discrimination.

1.  **Applicable Legal Standards**

Under Title VII, an employer cannot fail or refuse to hire or to discharge any individual, or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin. 42 U.S.C. § 2000e-2(a)(1). Thus, the Title VII inquiry is whether the defendant intentionally discriminated against the plaintiff based upon one of the factors prohibited by Title VII. *Johnson v. Louisiana,* 351 F.3d 616, 621 (5th Cir. 2003), *citing United States Postal Service Bd. of Governors v. Aikens,* 460 U.S. 711, 715 (1983). The TCHRA has similar prohibitions regarding racial and national origin discrimination, and additionally states that an employer may not discharge or discriminate against an employee due to the employee's age. Tex. Lab. Code § 21.051; *Quantum Chemical Corp. v. Toennies,* 47 S.W.3d 473, 475 (Tex. 2001). Section 21.051 is substantially identical to its federal equivalent in Title VII, except that the federal law does not protect against age and disability discrimination. *Id.* Because the TCHRA is modeled after Title VII, courts may look to federal law when interpreting and applying the TCHRA. *Quantum Chemical,* 47 S.W.3d at 476, *citing NME Hosps., Inc. v. Rennels,* 994 S.W.2d 142, 144 (Tex. 1999); *Ramirez v. DRC Distributors, Ltd.,* 216 S.W.3d 917, 922 n.9 (Tex. App. – Corpus Christi 2007, rev. denied).

7

Because Arora's race, national origin and age discrimination claims rely on the same factual basis, they can be analyzed together. To prevail on a Title VII or TCHRA claim, a plaintiff must demonstrate a *prima facie* case of discrimination, and the defendant must then articulate a legitimate, non-discriminatory reason for its decision. *Keelan v. Majesco Software, Inc.,* 407 F.3d 332, 341 (5th Cir. 2005); *Machinchick v. PB Power, Inc.,* 398 F.3d 345, 352 (5th Cir. 2005); *Niu v. Revcor Molded Prods. Co.,* 206 S.W.3d 723, 728 (Tex. App. – Fort Worth 2006, no pet. h.).

If the defendant meets its burden of production, the plaintiff must then offer sufficient evidence to create a genuine issue of material fact either 1) that the defendant's reason is not true, but is instead a pretext for discrimination (pretext alternative); or 2) that the defendant's reason, while true, is only one of the reasons for its conduct, and another motivating factor is the plaintiff's protected characteristic (mixed-motive alternative). *Id.; Desert Palace, Inc. v. Costa,* 539 U.S. 90 (2003).

Under the pretext alternative, the plaintiff bears the ultimate burden of proving discriminatory intent, and must do so to prevail on his claim. *Rios v. Rossotti,* 252 F.3d 375, 378 (5th Cir. 2001), *citing Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133 (2000). However, if the plaintiff demonstrates under the second alternative that race or age was a motivating factor in the decision, the defendant then must prove that the same adverse employment decision would have been made regardless of discriminatory

animus. *Keelan,* 407 F.3d at 341; *Machinchick,* 398 F.3d at 352. If the employer fails to carry this burden, plaintiff will prevail under the mixed-motive alternative. *Id.*

## 2. Analysis of Arora's Discrimination Claims

To establish a *prima facie* case of discrimination, Arora must show that 1) he is within the protected class; 2) he was qualified for his position; 3) he suffered an adverse employment decision; and 4) he was replaced by someone outside his protected class, or treated less favorably than similarly situated employees outside the protected class. *Smith v. City of Jackson, Mississippi,* 351 F.3d 183, 196 (5th Cir. 2003), *aff'd on other grounds,* 544 U.S. 228 (2005); *Sanstad v. CB Richard Ellis, Inc.,* 309 F.3d 893, 897 (5th Cir. 2002), *cert. denied,* 539 U.S. 526 (2003); *McCoy v. Texas Instruments, Inc.,* 183 S.W.3d 548, 554 (Tex. App. – Dallas 2006, no pet. h.).

Starwood first contends on summary judgment that Arora cannot establish a *prima facie* case of discrimination, because other employees outside of his protected category received the same treatment, i.e., were not treated more favorably. Specifically, Starwood points to facts showing that both Mares and Badri were also discharged following Starwood's investigation of Banquet Department management conduct during the 2005 ESS, for the same type of alleged misconduct as Arora. Mares was 26 years old, her race is Caucasian, and her national origin is Romanian. Badri was 34 years old, and his race and national origin are Indian. Therefore, Starwood argues that because it simultaneously fired two similarly situated younger employees, one of whom was

9

Caucasian, Arora cannot establish that employees outside his protected class were treated better than he. Starwood further supports its argument by presenting facts that show that it did not terminate the employment of two other Banquet Department managers who were investigated regarding the allegations of coercion related to the 2005 ESS – Jain, who is also Indian, and Attah, who is not Indian, but is the same age as Arora. Arora does not dispute these facts.

Arora responds that he has established a *prima facie* case because he was replaced by Ian McKie ("McKie"), a younger Caucasian who was allegedly less qualified. Arora relies solely on his own testimony as to McKie's age and race, but admits he obtained this information by hearsay and has no personal knowledge of these facts. Accordingly, Arora's conclusory allegations regarding McKie do not raise a material fact issue whether he was replaced by someone outside his protected class. *See Turner v. Baylor Richardson Medical Center,* 476 F.3d 337, 345-46 (5th Cir. 2007) (conclusory allegations are not competent summary judgment proof); *Topalian v. Ehrman,* 954 F.2d 1125, 1131 (5th Cir. 1992) (same). The court agrees that Arora has failed to set forth the required *prima facie* case of discrimination.

If Arora had sufficiently set forth evidence that establishes a *prima facie* case (which he has not), the burden now shifts to Starwood to articulate a legitimate, non-discriminatory reason for its decision to terminate Arora's employment. Starwood has carried its burden of articulating legitimate, non-discriminatory reasons for Arora's

termination, specifically that its investigation of employee complaints regarding the 2005 ESS showed that Arora attempted to coerce his employees into giving him high scores on the survey. Accordingly, Arora is required on summary judgment to set forth evidence raising a genuine issue of material fact whether Starwood's stated reason for its decision to terminate his employment is either 1) a pretext for discrimination; or 2) that Starwood's reason, while true, is only part of the reason for its decision, and that impermissible race, national origin and/or age discrimination also influenced Starwood's decision making. *Id.*

The court finds that Arora has not raised a material issue of fact with respect to whether Starwood's stated reason for its action was either pretextual, or that while Starwood's reason for Arora's discharge was true, it was also motivated to terminate him due to his race, age, and/or national origin. To raise a genuine issue of material fact regarding pretext, Arora must show that Starwood treated him less favorably than non-Indian, younger employees in "nearly identical" circumstances. *Bryant v. Compass Group USA Inc.,* 413 F.3d 471, 478 (5th Cir. 2005), *cert. denied,* 126 S. Ct. 1027 (2006); *Okoye v. Univ. of Tex. Houston Health Sci. Ctr.,* 245 F.3d 507, 514 (5th Cir. 2001).

In response to Starwood's motion, Arora first argues that Starwood's articulated reason for its decision is untrue because it is incorrect, in that it was Arora's understanding that the employees were to complete the ESS online, and that it was permissible for him or his assistants to obtain the log-in codes. Although Starwood may

have been mistaken about what actually took place, the court's concern on summary judgment is whether Starwood's perception of what took place, whether accurate or not, was the real reason for Arora's termination. *Laxton v. Gap, Inc.,* 333 F.3d 572, 579 (5th Cir. 2003); *Evans v. City of Houston,* 246 F.2d 344, 355 (5th Cir. 2001). It is not whether Starwood's proffered reason was an *incorrect* reason for his discharge. *Laxton,* 333 F.3d at 579 (emphasis in original); *Sanstad,* 309 F.3d at 899. The pertinent inquiry is whether the evidence supports an inference that Starwood intentionally discriminated against Arora.

It is well established that employment discrimination laws are not intended to be a vehicle for transforming the courts into personnel managers who second-guess the business decisions of employers. *Bryant,* 413 F.3d at 478; *Bienkowski v. American Airlines, Inc.,* 851 F.2d 1503, 1507-08 (5th Cir. 1988). Management does not have to make proper decisions, only non-discriminatory ones. *Bryant,* 413 F.3d at 478, *citing Little v. Republic Refining Co.,* 924 F.2d 93, 97 (5th Cir. 1991). Arora has not disputed Starwood's perception, at the time of his discharge, that he had improperly attempted to influence his employees' responses on the 2005 ESS. Accordingly, his disagreement with Starwood's view of what happened during the survey does not establish pretext. Similarly, Arora's assertion that he should have been disciplined instead of terminated does not show pretext. An employer's failure to follow its own policies does not itself conclusively establish that its non-discriminatory explanation for its actions is pretextual.

*Laxton,* 333 F.3d at 581 n.3, *citing EEOC v. Texas Instruments, Inc.,* 100 F.3d 1173, 1182 (5th Cir. 1996).

Finally, Arora makes various accusations of unrelated misconduct against fellow employees Wynn, Everett, Ginger Martin ("Martin") and Chris Palm ("Palm"), who allegedly received no discipline for their purported activities. Arora states that Starwood therefore discriminated against him by firing him for alleged misconduct in connection with the 2005 ESS. As the court has stated above, to raise an inference of intentional discrimination, comparators must have been treated differently in "nearly identical" circumstances. *Bryant,* 413 F.3d at 478; *Okoye,* 245 F.3d at 514. Arora has presented no evidence showing that Wynn, Everett, Martin and/or Palm's circumstances were in any way similar to his own. Moreover, he has not contested Starwood's summary judgment proof of how it treated the four other employees whose circumstances were identical to his – Mares and Badri (who were both younger than Arora, and one of whom is Caucasian, yet were also discharged for the same reason as Arora), and Jain and Attah (one Indian, the other the same age as Arora, both of whom were not terminated).

Thus, in the end, the court finds that Arora has presented no evidence beyond his own subjective belief that he was the victim of illegal discrimination. An employee's subjective belief of discrimination, no matter how genuinely held, cannot be the basis for judicial relief. *Byers v. Dallas Morning News, Inc.,* 209 F.3d 419, 427 (5th Cir. 2000); *Lawrence v. University of Texas Medical Branch at Galveston,* 163 F.3d 309, 313 (5th Cir.

1999); *Douglass v. United Services Automobile Association,* 79 F.3d 1415, 1430 (5th Cir. 1996). Starwood is entitled to summary judgment on all of Arora's race, national origin and age discrimination claims.

B.  **Retaliation**

Arora also claims that Starwood terminated him in retaliation for having engaged in a statutorily protected activity. Starwood moves for summary judgment on this claim, arguing that Arora is unable to present facts to support it.

1.  **Standards for Retaliation Claims**

Title VII and the TCHRA both prohibit discrimination against employees who have opposed an unlawful employment practice, made a charge of discrimination, or testified, assisted, or participated in any manner in an investigation or proceeding under the relevant statutes. 42 U.S.C. § 2000e-3(a); Tex. Lab. Code § 21.055. The traditional burden-shifting framework articulated in *McDonnell Douglas* applies to Arora's retaliation claim. *Evans,* 246 F.3d at 351, *citing McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973). However, where an employee concedes that discrimination was not the *sole* reason for his discharge, but argues that it was at least a motivating factor for his termination, the mixed-motive framework applies. *Richardson v. Monitronics Intl., Inc.,* 434 F.3d 327, 333 (5th Cir. 2005) (emphasis in original). The mixed motive framework is identical to the *McDonnell Douglas* analysis, except at the pretext stage. There, instead of showing pretext by setting forth evidence showing that the employer's reason for

discharge is untrue, the employee must show that the employer's reason, *while true*, is but one of the reasons for its action, another of which was discrimination. *Id.* (Emphasis added). If the employee successfully carries this burden, the burden then shifts to the employer, to prove that it would have taken the same action in absence of the discriminatory animus. *Id.*

To establish a *prima facie* case of retaliation, Arora must show that 1) he engaged in an activity protected by the applicable statutes; 2) he was subjected to an adverse employment action; and 3) that a causal link exists between the protected activity and the adverse employment action. *Davis v. Dallas Area Rapid Transit,* 383 F.3d 309, 319 (5th Cir. 2004); *Perez v. Region 20 Education Svc. Ctr.,* 307 F.3d 318, 325 (5th Cir. 2002).

If Arora establishes a *prima facie* case of retaliation, the burden shifts to Starwood to present proof of a legitimate, nonretaliatory reason for its actions. *Davis,* 383 F.3d at 319. Then, if Starwood carries its burden of production, Arora must show that "but for" his engaging in protected activity, he would not have been subjected to an adverse employment action. *Strong v. University Healthcare Sys., L.L.C.,* 482 F.3d 802, 806 (5th Cir. 2007); *Medina v. Ramsey Steel Co.,* 238 F.3d 674, 685 (5th Cir. 2001); *Sherrod v. American Airlines, Inc.,* 132 F.3d 1112, 1122 (5th Cir. 1998). While this portion of the analysis may seem identical to the "causal link" step of the *prima facie* case, the burden here is more stringent. *Medina,* 238 F.3d at 685; *McMillan v. Rust College, Inc.,* 710 F.2d 1112, 1116-1117 (5th Cir. 1983). To withstand summary judgment under the pretext

theory, Arora must reveal "a conflict in the substantial evidence on the ultimate issue of retaliation." *Sherrod,* 132 F.3d at 1122. Otherwise, if Arora were to proceed under the mixed-motive theory and admit that Starwood's reason for his discharge is at least in part true, he must still show that another factor in Starwood's decision to terminate his employment was retaliation for his alleged protected activity. *Richardson,* 434 F.3d at 333.

### 2. Analysis of Arora's Retaliation Claim

#### a. Did Arora Engage in Protected Activity?

Starwood first argues that Arora cannot establish a *prima facie* case of retaliation because he did not engage in activity protected by either Title VII or the TCHRA. Arora responds that he engaged in protected activity because he "participated in the investigation involving unlawful employment practices of Chris Palm," and that he complained to the hotel's comptroller Byron Moore ("Moore") that Everett made crude remarks regarding womens' anatomies, and that Wynn improperly charged drinks in the hotel bar, against established company policy. He further states that just days before he was terminated, an unidentified person from the corporate office visited the hotel and met with him secretly to avoid Everett's knowledge. Arora does not say what was discussed at this purported meeting.

Arora's allegations regarding Palm and Everett (or any discussion regarding same with Moore) are too conclusory to raise a material issue of fact whether he engaged in

16

statutorily-protected activity. *Turner,* 476 F.3d at 345-46; *Topalian,* 954 F.2d at 1131. Similarly, his testimony about the alleged "secret" meeting with an unidentified corporate representative, regarding topics he does not describe, is also too conclusory and insufficiently specific to raise a genuine issue of material fact regarding this element of his *prima facie* case. *Id.; see also Pineda v. City of Houston,* 291 F.3d 325, 331 (5th Cir. 2002), *cert. denied,* 537 U.S. 1110 (2003) (vague attributions to unidentified individuals not sufficient to create a fact issue). Finally, when Arora allegedly complained about Wynn improperly charging drinks at the hotel, he did not engage in statutorily-protected activity. *See Richard v. Cingular Wireless LLC,* 2007 WL 1121720, **4 (5th Cir. 2007) (protected activity must oppose or protest an unlawful employment practice). Accordingly, the court finds that Arora has not sufficiently set forth facts establishing the first element of his *prima facie* case.

### b. Causal Link Between Protected Activity and Subsequent Discharge

Because he was terminated, it is undisputed that Arora suffered an adverse employment action. However, Starwood contends on summary judgment that Arora also cannot establish the third element of his *prima facie* case of retaliation – a causal link between his alleged protected activity and his subsequent discharge. Specifically, Starwood states that Arora has no evidence that Everett and/or Wynn had knowledge of any of his comments about their conduct or that of the other employees cited by Arora. The court agrees that Arora has failed to provide such proof, and without it he

cannot establish a causal link between any protected activity and his termination. Without this causal link, Arora is not able to establish a *prima facie* case of retaliation.

### c. Legitimate Non-Retaliatory Reason for Termination

Even if the court assumes that Arora had produced sufficient evidence to support his *prima facie* case of retaliation, it finds that Starwood has properly asserted a legitimate, non-retaliatory reason for its decision to terminate Arora. Specifically, Starwood states that it decided to discharge him because it determined that he improperly interfered with the administration and results of the 2005 Employee Satisfaction Survey. Therefore, the ultimate burden of proof shifts back to Arora to show that he would not have been fired but for his protected activity.

### d. But-for Causation

Arora has failed to show that he would not have been fired "but for" his alleged protected activity. As the court stated above, Arora's summary judgment proof does not raise a fact issue regarding even the minimal showing of a causal link required at the *prima facie* stage. It therefore follows that his evidence does not meet the "more stringent" burden of showing that "but for" his protected activity, he would not have been let go. *Medina,* 238 F.3d at 685; *McMillan,* 710 F.2d at 1116-1117. As with his discrimination claims, Arora's subjective belief that he suffered retaliation is not sufficient to sustain this claim. *Byers,* 209 F.3d at 427; *Lawrence,* 163 F.3d at 313; *Douglass,* 79 F.3d at 1430.

### e. Mixed Motive

Finally, although Arora has pleaded a mixed motive theory, he has not argued such a theory on summary judgment or admitted that Starwood's justification for his discharge – coercive misconduct during the 2005 Employee Satisfaction Survey – is true. However, even if he had done so, his claim would still fail under the mixed-motive analysis because he has provided no evidence that Starwood also terminated him in retaliation for protected activity. Because Arora has failed to raise a genuine issue of material fact on this claim, Starwood is entitled to summary judgment.

## IV. Conclusion

For the foregoing reasons, Defendant's Motion for Summary Judgment is **granted**, and Plaintiff's claims are hereby **dismissed with prejudice**. Judgment will be entered by separate document.

**SO ORDERED.**

Signed March 12th, 2008.

_____
ED KINKEADE
UNITED STATES DISTRICT JUDGE